```
                                                                              C/M
```

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X

BETZALEL SCHWARTZMAN,

                      Plaintiff,      **MEMORANDUM**
                                                 **DECISION AND ORDER**
    -against-

                                                 08 Civ. 4990 (BMC)

YAAKOV HARLAP, also known as Jacob
Charlap,
                     Defendant.

----------------------------------------------------------- X

**COGAN, District Judge.**

The *esrog* or *etrog* is an ancient fruit referred to in the Bible that is valued among Jews in connection with the harvest festival holiday of *Sukkot*. The instant case arises from a dispute between petitioner, a grower and wholesaler of *esrogim*, and respondent, who was petitioner's exclusive U.S. distributor. Respondent complained that petitioner had violated his exclusive distributorship. He therefore refused to pay the balance owed on his account. Petitioner took him to arbitration pursuant to an arbitration clause in the contract, and received an award of $66,000.

Petitioner commenced this proceeding to confirm the award under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), as implemented by Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §§201, 207. Respondent, appearing *pro se*, opposes the award and seeks to vacate it, challenging both the merits of the award, and asserting that the arbitrator allegedly failed to disclose that petitioner had hired him to supply the kosher certification for the fruit. For the reasons set forth below, the petition is granted and the award is confirmed.

## BACKGROUND

Petitioner or his family had sold *esrogim* to respondent for over thirty years. A contract dated September 8, 2005 set forth the terms governing their relationship for that year. The contract provided that with regard to *esrogim* harvested prior to *Rosh Hashanah* (the Jewish New Year) of that year, none could be sold to any third party without notice to respondent. The contract also provided that respondent would be the exclusive American distributor for all *esrogim*.

There are two provisions in the distribution contract that bear on the instant dispute. The first is the arbitration clause itself, which is hand-written at the bottom of the contract: "Both parties agree that Rabbi Eliezer Stern will arbitrate any disputes." The preceding paragraph also contains a reference to Rabbi Stern: "Bezalel Schwartzman [i.e., petitioner here], will maintain the *hakosher* [kosher certification] on all *pardesim* [orchards] from Belz or Rav [Rabbi] Stern." This second provision relates to the fact that in order to market the *esrogim*, petitioner assumed and acknowledged the obligation to obtain kosher certification for the fruit, without which its market would have been eliminated or greatly reduced. According to respondent, petitioner's orchards had long been certified as kosher by the "Belz organization," but the certification responsibility was switched to Rabbi Stern sometime in 2005 or 2006, at a time unknown to respondent, after the signing of the contract here at issue.

Petitioner alleges that when the dispute arose, the parties agreed, in a submission agreement entered into in September 2006, to submit the dispute to Rabbi Stern. This submission agreement was signed by an attorney identifying himself as counsel for respondent; however, respondent says that this attorney never represented him. This is not a material dispute because

2

the parties agree that they thereafter submitted the dispute to Rabbi Stern, who rendered an award in favor of petitioner.

After Rabbi Stern rendered his award, it was challenged in the Israeli courts. (The record is not clear whether petitioner initiated that proceeding to confirm the award or respondent initiated the proceeding to set it aside). Respondent opposed on the ground, *inter alia*, that Rabbi Stern failed to disclose that petitioner had hired him to supply the kosher certification. However, the parties thereafter agreed to withdraw the Israeli proceeding and to remand the dispute to Rabbi Stern for further consideration of two additional arguments raised by respondent. Their stipulation was "so ordered" by the Jerusalem Magistrate's Court, and the dispute went back to Rabbi Stern. Rabbi Stern issued a supplemental decision stating that he had already considered and rejected respondent's additional arguments in rendering his award, and therefore he adhered to his original decision.

This proceeding followed.

## DISCUSSION

### I. Recognition

The Convention provides limited grounds for declining to confirm a foreign arbitral award. Section 207 requires this Court to confirm the award "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the . . . Convention." This refers the Court to Article V, which lists various grounds for denying recognition. None of those grounds permit the Court to revisit the merits of the award as respondent urges here. Respondent cannot use this Court to obtain a second bite of the *esrog*.

The more substantial question, albeit only slightly so, is whether there was a non-disclosure of the relationship between petitioner and Rabbi Stern that warrants denial of

3

recognition. Petitioner contends that since the Convention provides no such ground, respondent's argument must be rejected. This is wrong. The Convention allows for non-recognition if an award violates the public policy of the country in which recognition is sought. It is a fundamental aspect of United States' policy concerning arbitration that arbitrators must disclose material relationships with the parties that could impact their impartiality. See Commonwealth Coatings Corp. v. Continental Casualty Co., 393 U.S. 145, 89 S. Ct. 337 (1968). Although Commonwealth Coatings involved a domestic award under the Federal Arbitration Act's "evident partiality" standard, the policy considerations set forth in the case are equally applicable through the "public policy" standard for non-recognition in the Convention. See Marine Seaways Corp. of Monrovia v. Marc Rich & Co., A.G., 480 F. Supp. 352, 357 (S.D.N.Y. 1979).

However, respondent cannot avoid recognition here. The Second Circuit has "viewed the teachings of Commonwealth Coatings pragmatically, employing a case-by-case approach in preference to dogmatic rigidity," and has "not been quick to set aside the results of an arbitration because of an arbitrator's alleged failure to disclose information." Andros Compania Maritima, S.A. v. Marc Rich & Co., 579 F.2d 691, 700 (2d Cir. 1978). Of particular relevance here, the Circuit has rejected efforts to avoid recognition based on an undisclosed relationship where the complaining party should have known of the relationship, see Cook Indus., Inc. v. C. Itoh & Co. (America), 449 F.2d 106, 107-08 (2d Cir. 1971), or could have learned of the relationship "just as easily before or during the arbitration rather than after it lost its case." Andros, 579 F.2d at 702. The motivating concern of these cases is that an arbitral litigant should not be allowed to sit back, hope for a successful outcome, and then raise the alleged non-disclosure only if he is unhappy with the result. See Lucent Technologies, Inc. v. Tatung Co., 379 F.3d 24, 28-29 (2d

4

Cir. 2004). At the core of this concern is the recognition that because arbitration is a creature of contract, parties are free to appoint an arbitrator that has a relationship with one of them, as long as reasonable steps have been taken to disclose it and the parties therefore know or should know of that relationship.

Under this standard, the award must be recognized. The contract itself advised respondent that Rabbi Stern might be called upon to give the *hakosher* for the orchards; respondent does not contend, nor could he reasonably, that he expected this to be done without petitioner paying Rabbi Stern a fee. Respondent's argument boils down to his contention that at the time he signed the agreement, he knew it was possible, and allowable, for Rabbi Stern to give the kosher certification, but he did not know, at the time of the arbitration, that it had actually happened. That does not matter. Respondent had "blessed" the arrangement between petitioner and Rabbi Stern at the time he signed the contract by agreeing both to arbitrate before Rabbi Stern and allowing Rabbi Stern to work for petitioner; that Rabbi Stern actually did the work later did not give respondent grounds to withdraw the consent that he had previously given.

But there is more. Even putting aside the submission agreement signed by an attorney purporting to act for respondent after disclosure that Rabbi Stern had in fact been engaged, the facts are undisputed that petitioner raised in the Israeli court the very point of non-disclosure that he raises here. He then withdrew that objection and agreed to resubmit the matter to the very same Rabbi Stern about whom he is now complaining. There is thus no doubt that even if respondent originally had a valid complaint of non-disclosure, which I hold he did not, he waived that right by resubmitting the dispute back to Rabbi Stern with full knowledge that Rabbi Stern had been engaged to give the kosher certification. See Garfield & Co. v. Wiest, 432 F.2d 849 (2d Cir. 1970).

## II. Interest and Attorneys' Fees

The Court rejects petitioner's request for attorneys' fees. Respondent's mild opposition to paying the award, although without merit, does not nearly constitute the kind of bad faith conduct sufficient to overcome the American rule. See generally F.D. Rich Co. v. United States ex rel. Industrial Lumber Co., 417 U.S. 116, 129, 94 S.Ct. 2157, 2165 (1974). However, an award of prejudgment interest is appropriate under the Convention in the absence of some reason not to award interest. See Waterside Ocean Navigation Co., Inc. v. Int'l Navigation Ltd., 737 F.2d 150, 153-54 (2d Cir. 1983). Interest is appropriate on the facts of this case.

## CONCLUSION

The petition to confirm the award is granted, and the motion to vacate the award is denied. The Clerk of the Court is directed to enter judgment in favor of petitioner and against respondent in the amount of $66,000, plus interest at the federal rate applicable to judgments from September 26, 2006, the date of the arbitration award.

**SO ORDERED.**

/Signed.by Judge Brian M. Cogan/
U.S.D.J.

Dated: Brooklyn, New York
April 13, 2009